UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PETER JOKICH, M.D., FSBI, FACR,**<br><br>Plaintiff,<br><br>v.<br><br>**RUSH UNIVERSITY MEDICAL CENTER,**<br><br>Defendant. | No. 18 C 7885<br><br>Magistrate Judge Beth W. Jantz |

## MEMORANDUM OPINION & ORDER

Plaintiff Peter Jokich, M.D., ("Jokich") filed suit against Defendant Rush University Medical Center ("Rush"), bringing claims for retaliation under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34 ("the ADEA"), Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/1-101 ("IHRA"). He also brings breach of contract claims for Rush's alleged breach of his employment agreements and the Rush Medical Staff Bylaws. (*Id.*) For the reasons set forth below, Rush's Motion to Compel and for Sanctions [85] is granted in part and denied in part; and Rush's Supplemental Motion for Fees Under Rule 37 [106] is denied.

## DISCUSSION

This case arises from the termination of Dr. Jokich's employment as the Director of Breast Imaging at Rush. On August 22, 2018, Jokich was demoted and placed on administrative leave, at a reduced salary, through June 2019. He was also

suspended and not allowed to practice medicine at Rush until his contract expired on June 30, 2019. Jokich alleges that his termination was retaliation for his complaint about discrimination against women and older physicians as well as the lack of Latinx persons in top executive positions at Rush. He also claims Rush breached an employment agreement it had with him that guaranteed his position as Director of Breast Imaging through June 30, 2020, which would automatically be extended to June 2022 if certain goals were met.

Jokich filed suit in federal court on November 29, 2018. (Dkt. 1). Fact discovery closed on February 28, 2020 and a trial date had been set for June 22, 2020. (Dkt. 58). Due to the Coronavirus Covid-19 Public Emergency, the trial date was recently stricken and will be re-set on or after June 29, 2020. (*See* Third General Order 20-0012 dated April 24, 2020). The next status hearing before District Judge Lefkow has been scheduled for July 28, 2020. (Dkt. 123). Before this Court are Rush's motions to compel, for sanctions, and for attorneys' fees.[1]

### A. Motion to Compel Discovery on Jokich's Mitigation Efforts

Rush first moves to compel Jokich to "produce documents and testify meaningfully about mitigation of his claimed damages." (Dkt. 85, 86, both at 1). In its First Request for Production No. 9, Rush asked for "[a]ll documents related to any effort by Dr. Jokich after August 22, 2018 to obtain any other employment, including any documents showing any offers, acceptances, rejections, interviews, requests for interviews, appointment letters, or employment agreements." (Dkt. 87-16 at 5).

---

[1] The Court is not deciding Rush's request to deny Jokich leave to take further depositions, (dkts. 85/86, at 1), as a motion on this issue is in front of Judge Lefkow, (*see* dkt. 113).

2

Jokich initially objected to this request on relevancy grounds on July 10, 2019, (*id.*), but withdrew his objection on August 15, 2019, (dkt. 87-13 at 1). On January 24, 2020, Rush demanded that Jokich respond to Request No. 9 by producing the mitigation documents, by confirming that no responsive documents exist, or by indicating that Jokich maintains an objection to producing them, in which case Rush would move to compel. (Dkt. 87-23 at 2). On February 6, 2020, Jokich agreed to produce mitigation documents only if Rush stipulated to an attorney's eyes only ("AEO") designation, which Rush refused to do. (Dkt. 87-25 at 1–3). On February 12, 2020, five days before Jokich's scheduled deposition, the parties remained at an impasse regarding an AEO designation. (Dkt 87-26 at 1–3). By the time of his deposition on February 17, 2020, Jokich still had not produced any mitigation documents nor had he moved for a protective order. Instead, Jokich's counsel instructed Jokich not to answer with any specificity defendant's counsel's questions regarding his mitigation efforts at his deposition. (Dkt. 87-2 at 82–84).

The Court is persuaded by Rush's arguments that Jokich improperly refused to produce mitigation documents prior to the deposition and that Jokich's counsel improperly instructed Jokich not to answer deposition questions without first seeking a protective order. (*See* Dkt. 86 at 9–11). Instructions not to answer a deposition question may be given "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. Proc. 30(c)(2). Otherwise, "[a]n objection at the time of examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken

3

subject to any objection." *Id*. Jokich's counsel argues that it was permitted to instruct Jokich not to answer because Rush did not agree to an AEO designation of mitigation documents. But Jokich's counsel did not file for a protective order seeking an AEO designation in the ample time either before or during the deposition.

Indeed, the first time Jokich brought anything akin to a request for a protective order was in his response brief filed on April 15, 2020 (which this Court deems as a constructive request for a protective order), a full 2 months after Jokich's deposition and 1 and ½ months after the close of discovery. (Dkt. 111 at 7–8, fn1). Jokich's argument that this request is timely because the parties were attempting to resolve the dispute without the Court's involvement is meritless. (*Id*.) Jokich had ample opportunity – and an obvious and longstanding impasse between the parties – in order to file for a protective order but failed to do so, despite Rush emphasizing that it would not agree to an AEO designation without court intervention both before and during Jokich's deposition. *See* (Dkt. 87-25 at 1–3); (Dkt. 87-26 at 1–2); (Dkt. 87-2 at 82-84).

Jokich's request now for AEO treatment of any mitigation documents is not only untimely but also fails on the merits. "The AEO designation must be used selectively because discovery and trial preparation are made significantly more difficult and expensive when an attorney cannot make a complete disclosure of relevant facts to a client and because it leaves the litigant in a difficult position to assess whether the arguments put forward on its behalf are meritorious." *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015).

4

The party seeking the protective order "must show specific facts showing good cause" to warrant such a protective order. *Id.*

Jokich argues that he "is justifiably concerned that Rush management might interfere with his job discussions given the high level of enmity," and, thus, an AEO restriction is warranted. (Dkt. 111 at 6). In support of his position, he cites to deposition testimony of now-retired Rush CEO, Dr. Larry Goodman, (dkt. 111-4 at 59), who responded to deposition questions about whether a hypothetical high-profile Cleveland Clinic doctor could be harmed, or other employees could be unnerved, if his employer found out that he was possibly negotiating with another institution to leave. But Dr. Goodman's deposition testimony does not support Jokich's argument: Dr. Goodman replied at one point, "Well, of course, just as it could enhance that person's position sometimes as they try to counter recruit, ***so it cuts both ways*** . . . many times when these things occur and someone walks in from another institution to our institution, most people sort of guess this may be a round of recruitment, but I agree with you." (Dkt. 111 at 6–7) (citing Dkt. 111-4 at 58) (emphasis added). CEO Goodman also qualified his responses that "generally speaking" such negotiations are sensitive and confidential, but this qualifier necessarily means that not all cases would fall under this. (*Id.*). This deposition testimony falls short of demonstrating the required "specific facts" that Jokich has good cause to be concerned that Rush would interfere with his job negotiations due to enmity. Rather, Rush makes the legitimate counterpoint that it's just as likely that Rush would have wanted Dr.

5

Jokich to find another job to mitigate its possible litigation exposure. (Dkt. 116 at 4).

Broad allegations of competitive injury have been rejected to support an AEO designation, and Jokich provides no case law stating otherwise. *See Glob. Material Techs.,* 133 F. Supp. 3d at 1084 ("Conclusory statements—including 'broad allegations of potential harm' or competitive injury—are insufficient to meet the good cause standard") (*quoting Chicago Mercantile Exch., Inc. v. Tech. Research Grp., LLC,* 276 F.R.D. 237, 241 (N.D. Ill. 2011)); *Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 WL 256476, at *1 (N.D. Ill. Jan. 31, 2005) (denying AEO designation where arguments of competitive injury were made "in very general terms," noting that an AEO designation "will only be used on a relatively small and select number of documents where a genuine threat of competitive or other injury dictates such extreme measures.").[2]

Accordingly, the Court denies Jokich's untimely and unsupported request for a protective order for an AEO designation, and grants Rush's motion to compel. Jokich shall produce mitigation documents within fourteen days of this order. Rush will also be permitted to re-depose Jokich, if necessary, for up to one hour on his

---

[2] Jokich relatedly argues that "Rush's subsequent motion to amend its Answer to add the affirmative defense of mitigation, (dkt. 107), demonstrates Rush's own acknowledgment that the very issue that is the subject of this particular discovery dispute—mitigation evidence—is not even properly in this case at this point in time." (Dkt. 111 at 8). But even if this was true as a legal matter – and Jokich cites no legal authority for its position – Jokich would have needed to make this relevancy argument when objecting to Request No. 9. *See* Fed. R. Civ. Proc. 34(b)(2)(B) and (C). Although Jokich initially objected to Request No. 9 on the grounds of relevancy, he later withdrew that objection, (dkt. 87-13 at 1), thereby waiving it. *See, e.g., Zambrano v. Sparkplug Capital, LLC*, No. 19 CV 100, 2020 WL 1847396, at *1 (N.D. Ill. Apr. 13, 2020) (noting "courts almost uniformly hold" that objections not timely made under Rule 34(b) are waived).

mitigation efforts. *See, e.g., Nat. Res. Def. Council v. Illinois Power Res. Generating, LLC*, No. 13-CV-1181, 2017 WL 6566863, at *4 (C.D. Ill., Dec. 14, 2017) (authorizing an additional hour of deposition time to correct for defense counsel's improper instruction to deponent not to answer questions in violation of Rule 30(c)(2)).

Further pursuant to Rule 30(d)(2), the Court "may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." The Court finds that Rush is entitled to the reasonable attorney's fees incurred in attending and taking Jokich's second deposition regarding mitigation, if it chooses to take one, and the cost of any additional transcript. *See, e.g., Medline Indus. v. Lizzo*, No. 08 C 5867, 2009 WL 3242299, at *4 (N.D. Ill. Oct. 6, 2009) (awarding fees under Rule 30(d)(2) for a second deposition).

The Court also awards attorney's fees for preparing and filing the portion of the instant motion devoted to the motion to compel, as Jokich's failure to produce was not substantially justified. *See* Fed. R. Civ. Proc. 37(a)(5)(A) (if a motion to compel is granted, the court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. . . . "). The Court therefore gives Rush leave to file, within 14 days after any second deposition of Jokich has been taken, a petition for fees and costs with respect to all compensable conduct identified in this Opinion. Any such fee petition should include details

7

about the attorneys' billing rates and hours expended, and should also explain why the fees and costs requested are reasonable.

### B. Motion to Exclude Documents and Witnesses under Rule 37(c)

Next Rush moves to bar newly disclosed witnesses and documents listed in Jokich's "First Supplemental Rule 26(a)(1) Initial Disclosures" served three days before the February 28, 2020 discovery cutoff. (Dkt. 86 at 8, 12). These new witnesses include: Beth Volin, M.D., Robert Kimura, M.D., Mireya Dondalski, M.D., Kevin Bethke, M.D., Nora Jasowiak, M.D., Katherine Yao, M.D., Cheryl Jokich, Alexandra Westrate; Carla Jokich, and Ava Jokich.[3] (Dkt. 85 at 1; 86 at 8, fn1); (Dkt. 116 at 7, fn2). Jokich's newly disclosed documents include: "All publicly filed and disclosed documents showing the assets, liabilities and net worth of Rush University Medical Center" from 2016 to the present" and "all documents produced by either party" in Norma Melgoza's separate lawsuit against Rush." (Dkt. 85 at 1; Dkt. 86 at 8, fn1 (citing Dkt. 87-28 at 24)). None of these witnesses or documents were identified in Jokich's Initial Disclosures of April 5, 2019. (Dkt. 86 at 8); (Dkt. 87-28 at 1–11).

Rule 26 of the Federal Rules of Civil Procedure governs initial and supplemental disclosure requirements. Under Rule 26(e), a party must supplement its initial disclosures "*in a timely manner* if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the

---

[3] In its reply, Rush indicated that the parties resolved their dispute as to the group described in Jokich's Supplemental Disclosure as "All Rush HR Managers and Executives involved in the investigation of allegations of discrimination and retaliation by Norma Melgoza." (Dkt 116 at 7, fn 2).

8

discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). To ensure compliance with these disclosure requirements, Rule 37(c)(1) provides:

> ***Failure to Disclose or Supplement.*** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

The district court is given broad discretion in determining whether a failure to comply with Rule 26(a) or (e) is substantially justified or harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) ("'[W]e shall affirm the judgment of the district court whenever we believe that the district court chose an option that was among those from which we might expect a district court reasonably to choose.'" (internal citation omitted)). Further, a "district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Id.* (internal quotation omitted). The Seventh Circuit has indicated that district courts should be guided by the following factors in making Rule 37 determinations: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.*; *Uncommon, LLC v. Spigen, Inc.,* 926 F.3d 409, 417 (7th Cir. 2019) (internal quotations omitted).

The Court finds that, in lieu of a sanction of exclusion, these factors weigh in favor of a limited re-opening of discovery to allow Rush the opportunity to obtain

9

discovery if needed on the newly identified witnesses and information. In making this determination, the Court considered the prejudice of the earlier non-disclosure to Rush, the ability to cure the prejudice, any delay of trial, and any willfulness and bad faith involved in the non-disclosure.

As to the first factor, prejudice or surprise, the late disclosures days before the discovery cut off effectively prevented Rush from taking discovery during the previously-set discovery period on the new witnesses and information produced. Jokich offers no sufficient justification for waiting until three days before the close of discovery to introduce new documents and witnesses. Rather, he argues that Rush "cannot reasonably claim surprise or prejudice" because the majority of the witnesses were or are employed by Rush and that Rush "controls many of these individuals through the employment relationship." (Dkt. 111 at 3). The Court disagrees with this rationale. Just because many of the witnesses at some point were employed by Rush does not mean that Rush currently has control over them or an employment relationship with them. Indeed, Rush represents that only one of the ten named individuals is still employed by Rush. (Dkt. 116 at 8). Further, whether or not they are current or former employees, Rush did not know Jokich would be relying on these individuals or evidence in this case, so could not decide whether to obtain discovery on them; to hold otherwise would allow this exception to swallow the rule. This is prejudicial.

The second and third factors, ability to cure prejudice and delay in trial, however, weigh heavily in favor of a limited re-opening of discovery rather than

10

exclusionary sanctions. Jokich argues that there is ample opportunity to cure any prejudice by re-opening discovery, given the current public health crisis, during which civil jury trials have been canceled and "deadlines have been extended dramatically." (Dkt. 111 at 3, 5). Given that the June trial date has been stricken due to the Coronavirus Covid-19 Public Emergency, (*see* dkt. 123; Third General Order 20-0012), there is temporal opportunity for re-opening discovery. The final factor also weighs against exclusionary sanctions, as the Court finds no evidence that Jokich willfully and in bad faith delayed his disclosures.

Accordingly, the Court denies Rush's motion for exclusionary sanctions for Jokich's supplemental disclosures but will re-open discovery for the limited purpose of allowing Rush discovery on these disclosures, if needed.

    **C.**    **Motion to bar discovery not properly produced or disclosed under Rule 37(b)(2)**

Next, Rush moves to bar Jokich "from introducing any documents that he has not previously produced (other than documents that Rush produced to him) that would have been responsive to Rush's Requests Nos. 1 through 8, 13, 14, and 15." (Dkt. 85 at 1; 86 at 11–12).

Rush seeks this sanction under Rule 37(b)(2)(A)(ii), (*id*.), which provides: "(b) Failure to Comply with a Court Order. . . . (2) . . . (A) For Not Obeying a Discovery Order. . . . (ii) [the court may] prohibit[ ] the disobedient party from . . . introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(iii). Rush argues that this result is warranted in this case because Jokich failed to either produce

11

responsive documents or admit in writing that he had no responsive documents to Rush's Requests to Produce Nos. 1 through 8 and 13 through 15. (Dkt 86 at 11–12).

For support, Rush cites to *Odeen*, in which the court barred the plaintiff "from using any evidence that would have been responsive to the outstanding discovery." *Odeen v. Centro, Inc.,* No. 412 CV 04083SLDJEH, 2014 WL 1245344, at *4 (C.D.Ill., Mar. 26, 2014). But *Odeen* is inapt. In *Odeen*, the plaintiff failed to comply with the court's order compelling discovery responses, which indicated that a "[f]ailure to comply with this Order may result in imposition of sanctions, up to and including entry of default." *Id.* at *2. The court found plaintiff's behavior "objectively unreasonable," when he failed to comply with discovery deadlines even when ordered to do so by the court. *Id.* at *4.

Here, however, the Court has issued no such order compelling Jokich to respond to Requests Nos. 1 through 8, and 13 through 15, so Rush's motion under this Rule misses the mark. Accordingly, the Court declines to impose a sanction under Rule 37(b)(2). That being said, however, at this juncture now, Jokich shall either produce all responsive documents to these requests, or indicate that no responsive documents exist, within 14 days of this order, or sanctions may result following this order.

### D. Motions for Attorney's Fees under Rule 37 related to Jokich's Prior Motions to Compel

Finally, Rush seeks attorney's fees incurred in resisting Jokich's first two motions to compel, (dkts. 61, 66), pursuant to Rule 37(a)(5), (dkts. 85 at 2; 86 at 13–14; 106). If a motion to compel is denied, the Court must "require the movant . . . to pay

12

the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees" unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. Proc. 37(a)(5)(B). If a motion to compel is granted in part and denied in part, the court may "apportion the reasonable expenses for the motion." Fed. R. Civ. Proc. 37(a)(5)(C). "When 'the dispute over discovery between the parties is genuine, . . . the losing party is substantially justified in carrying the matter to the court' and the award of expenses is not indicated." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 223 (N.D. Ill. 2013) (quoting Fed.R.Civ.P. 37(a) (1970 Committee Notes), and declining to award fees).

Here, the Court finds that the discovery disputes Jokich brought forth in his first two motions to compel were genuine, and he was therefore substantially justified in bringing these motions. This is evidenced by the Court's lengthy hearing and legal analyses deciding them. (*See* Dkts. 95, 104). As such, Rush's request for fees and costs is denied.

## **CONCLUSION**

For the foregoing reasons, Rush's Motion to Compel and for Sanctions [85] is granted in part and denied in part; and Rush's Supplemental Motion for Fees Under Rule 37 [106] is denied.

The Court grants Rush's motion to compel, and Jokich shall produce mitigation documents within fourteen days of this order. Rush will also be permitted to re-depose Jokich, if necessary, for up to one hour on his mitigation efforts. The Court

13

finds that Rush is entitled to the reasonable fees and costs incurred if it chooses to re-depose Jokich. The Court also awards attorney's fees for filing the portion of the instant motion devoted to the motion to compel.

The Court denies Rush's motion to exclude documents and witnesses under Rule 37(c), but will re-open discovery for the limited purpose of allowing Rush the opportunity to obtain discovery, if needed, on the newly identified witnesses and information in Jokich's First Supplemental Rule 26(a)(1) Initial Disclosures.

The Court denies Rush's motion to bar discovery not properly produced or disclosed under Rule 37(b)(2), but orders Jokich to either produce all responsive documents to Requests Nos. 1 through 8 and 13 through 15, or to indicate that no responsive documents exist, within 14 days of this order, or sanctions may result following this order.

The Court denies Rush's motions for attorney's fees under Rule 37 related to Jokich's prior motions to compel.

The Court is not deciding at this time Rush's request to deny Jokich leave to take further depositions, (dkt. 85/86 at 1), as a motion on this issue is in front of Judge Lefkow, (*see* dkt. 113).

E N T E R:

Dated: May 1, 2020

BETH W. JANTZ
United States Magistrate Judge

15